865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beulah MARTIN (widow of Johnnie Martin), Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 87-4091.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1989.
 
 Before KENNEDY, BOYCE F. MARTIN, Jr., and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Johnnie Martin, a coal miner, filed an application for benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended 30 U.S.C. 901 et seq., on May 12, 1975. Martin died on May 18, 1978, before disposition of his claim. His widow, Beulah Martin, filed a claim on June 8, 1978. Both claims were denied administratively June 20, 1980. An administrative law judge reviewed and upheld the denial of these claims following a hearing. This decision was affirmed on appeal by the Benefits Review Board on October 28, 1987. It is from this decision that Martin takes her appeal. For the reasons stated below, we reverse.
 
 
 2
 It is not disputed that Johnnie Martin suffered from pneumoconiosis. The sole issue in this case is whether or not Johnnie Martin amassed the requisite 10 years of coal mining employment entitling him to the interim presumption of 20 C.F.R. Sec. 727.203(a). Under section 727.203(a) a claimant may be entitled to an interim presumption that the miner for whom he or she is claiming benefits was totally disabled due to pneumoconiosis arising out of coal mining employment. The claimant must show that the miner was engaged in coal mining employment for at least 10 years (40 quarters) and produce one of four types of medical evidence. The requisite medical evidence shows that Johnnie Martin did suffer from pneumoconiosis.
 
 
 3
 In his 1975 application for benefits, Johnnie Martin alleged 18 years of coal mine employment. On a history of coal mine employment form, Martin specified the years in which he worked as a coal miner and the companies for whom he worked. This work history amounted to more than 10 years of coal mine employment. Martin's social security earnings report, however, showed a total of 45 quarters of wages reported by employers. In addition to this, Martin produced a letter from Barbara Stumbo of the Nancy Elkhorn Coal Company stating that Martin had worked there for 27 months. Beulah Martin also alleged that her husband worked several additional months in coal mining employment.
 
 
 4
 The administrative law judge considered this evidence and concluded that Martin had not proven 10 years of coal mining employment as required by 20 C.F.R. Sec. 725.203. The Benefits Review Board found that there was substantial evidence to uphold this finding as required by 33 U.S.C. Sec. 921(b)(3) and incorporated by 30 U.S.C. Sec. 932(a). The Board also found that the claimant did not point to any errors made by the administrative law judge in reaching this conclusion. Accordingly, the Board interpreted the appeal as a request to reweigh the evidence. This the Board refused to do.
 
 
 5
 Our scope of review is limited in this case. This Court must determine whether the Board was correct in concluding that the administrative law judge's decision was supported by substantial evidence. Campbell v. Consolidation Coal Co., 811 F.2d 302, 303 (6th Cir.1987). The administrative law judge erred in his computation of the duration of Johnnie Martin's coal mining employment. His conclusion that Martin had less than 10 years of qualifying coal mining employment is not supported by substantial evidence.
 
 
 6
 Martin's Social Security earnings statement on its face indicates that Martin had the requisite 40 quarters entitling his claimant to the section 727.203 presumption. The statement shows that Martin worked 45 quarters between 1941 and 1972. Most of the employers for this period were clearly engaged in coal mining activity. Two companies on the statement, for whom Martin worked a total of 3 quarters, were identified only by their Social Security employer numbers. The administrative law judge did not include these in his computation of Martin's work record. The administrative law judge also did not credit Martin with work he did for several other employers recorded on his Social Security earnings statement. This recorded employment included 1 quarter with Kentucky West Virginia Gas Company, 2 quarters with Electro Metallurgical Company, 1 quarter with Nelson Mach Mfg., and 1 quarter with the Kentucky Department of Transportation.
 
 
 7
 It is entirely possible that each of these employers was engaged in coal mining activity even though their names may ostensibly indicate otherwise. However, even if these employers and those who are identified only by Social Security employer numbers are excluded from the calculation of Martin's coal mining work record, he still has a total of 40 quarters of qualifying employment.
 
 
 8
 The administrative law judge decided to credit Martin with less than 40 quarters of coal mining employment for several reasons. This decision is not supported by substantial evidence. The administrative law judge considered a letter from Barbara Stumbo of the Nancy Elkhorn Coal Company stating Martin's work record with Nancy Elkhorn. This letter asserted that Martin worked a total of 9 quarters for Nancy Elkhorn. The administrative law judge found that these records were "more precise than the Social Security earnings record which lists twelve quarters." The administrative law judge failed to state why he found the letter "more precise." The administrative law judge was unwarranted in finding the letter from Nancy Elkhorn to be a more accurate record of Martin's work experience at Nancy Elkhorn. Indeed, there is substantial evidence which supports the opposite conclusion. The letter does not credit Martin for having worked for Nancy Elkhorn in 1942. The Social Security earnings statement reports that Martin worked for Nancy Elkhorn in the third quarter of 1942. The administrative law judge's presumption of greater precision is unfounded.
 
 
 9
 Moreover, the administrative law judge noted that Martin earned less than $50.00 in each of the four quarters in which Martin was engaged in coal mining employment. The administrative law judge did not expressly state that he would not credit these quarters at all or would not fully credit them. We believe these quarters should be fully credited. Even if these quarters are not fully credited, Martin's own history of coal mine employment form provides him with enough qualifying employment to entitle his claimant to the section 727.203 presumption.
 
 
 10
 The administrative law judge found that the Social Security earnings statement was "a more reliable record of the miner's employment than the miner's work history." The administrative law judge reached this decision because of inconsistancies between Martin's work history statement and the Social Security earnings report. For example Martin alleged that he worked for Beaver Coal and Mining Company for 3 to 4 years, from 1940 to 1944, yet the Social Security earnings statement lists earnings from Beaver Coal for 13 quarters between 1945 and 1951. Similarly, on his work history form Martin alleged that he worked for Jody Lee Coal from 1966 to 1972. The Social Security Earnings statement indicated that Martin worked for Jody Lee Coal 1 quarter each in 1962, 1966, 1970, 1972 and for 2 quarters in 1965 and 1972. Moreover, Martin alleged work for Monroe Jones Trucking and Newsome Coal Company, however, these companies are not listed in the Social Security earnings record.
 
 
 11
 We note that the administrative law judge's decision to favor the Social Security earnings statement over Martin's own work history form because of inconsistencies between the two is unconvincing. The administrative law judge could likewise have found that the Social Security earnings statement was more reliable than the letter from Nancy Elkhorn because the letter was inconsistent with it. We also note that the Social Security earnings statement and Martin's own work history form do do not show the same work record. There is some overlap, but it is only slight. For example, according to Martin he may have worked as many as 30 quarters with Jody Lee Coal. This figure far exceeds the 8 quarters credited to Martin from the Social Security earnings statement.
 
 
 12
 The two records may be inconsistent but they are not necessarily contradictory. Martin may very well have worked for Jody Lee Coal and the other employers for the entire time which he alleged. Indeed, it is likely that he was paid in cash during much of this time so that the Social Security earnings statement does not reflect this employment. The administrative law judge finding that Martin did not prove 10 years of coal mining employment is not supported by substantial evidence.
 
 
 13
 Martin's claimant is entitled to the presumption under 20 C.F.R. Sec. 727.203 that Martin's pneumoconiosis arose out of coal mining employment. We reverse the administrative law judge and the Benefits Review Board and remand this case to the Board for the payment of benefits.
 
 
 14
 ALAN E. NORRIS, dissenting.
 
 
 15
 I am hard-pressed to follow the reasoning of the majority which leads it to conclude that the administrative finding is not supported by substantial evidence.
 
 
 16
 The administrative law judge relied primarily upon the record of the miner's earnings reported to the Social Security Administration, in determining whether the claimant had carried her burden of proving the length of her husband's coal mine employment. This reliance was the product of considerable conflict between the social security records and the eighteen years' total coal mine employment claimed by the miner on his application for benefits, and time frames within which that employment was claimed. The A.L.J. noted that the social security records reflected earnings from coal mining during forty quarters. Reported quarterly earnings ranged from a low of $37.27 (third quarter 1950), to a high of $657.38 (forth quarter 1946). Because the A.L.J. apparently overlooked two quarters of employment for the Jody Lee Coal Company during 1972, the total should have been forty-two quarters: Edgemont Fuel, 6; Nancy Elkhorn Coal, 12; Beaver Coal, 13; Little Coal, 3; and Jody Lee Coal, 8.
 
 
 17
 The A.L.J. then compared the social security reports for earnings from Nancy Elkhorn Coal, with a statement submitted by the company showing the exact dates on which the miner was employed during 1942-47. For the years 1943-47, the company statement and the social security records are consistent, as they both show that the miner was employed by the company during the same quarters of those years. But, since social security records show only that some earnings were reported during listed quarters, as opposed to days of employment, they are only circumstantial evidence that the miner worked for an entire quarter. And, they are circumstantial evidence of a full quarter's employment only where the fact that earnings were reported during that quarter and the amount of the earnings reported will support a reasonable inference that the miner did in fact work for the full ninety-day period. By contrast with the social security records, the company statement documents the miner actually having worked only two years and three months during the quarters in 1943-47 for which some earnings were reported to the Social Security Administration.
 
 
 18
 Manifestly, then, for those years, since the records of the Social Security Administration and Nancy Elkhorn Coal are not inconsistent, and those of Nancy Elkhorn Coal are more precise and reliable than those of the Social Security Administration on the question of the actual length of coal mine employment, the A.L.J. correctly favored the company records. Nor did the A.L.J. err in failing to accord the miner credit for one quarter's employment with Nancy Elkhorn Coal in 1942, as shown on the social security records but not in the company's statement, since the miner was given credit for those same months as an employee of Edgemont Fuel.
 
 
 19
 The A.L.J. then, in effect, subtracted three quarters from the length of employment with Nancy Elkhorn Coal and concluded that only nine quarters of employment had been proved with that company. He also declined to recognize one quarter of employment with Beaver Coal, two quarters with Little Coal, and one quarter with Jody Lee Coal, since the reported earnings for each of these quarters was less than $50. Although the majority "believes" these quarters should be credited in full, it assigns no reason for doing so. Surely, in light of reports of significantly higher earnings in earlier years, earnings of $42 during the fourth quarter of 1972, for example, do not support a reasonable inference that the miner worked for Jody Lee Coal for the full quarter. The A.L.J.'s view of the evidence in this regard cannot be regarded as unreasonable, since he drew inferences favorable to the claimant when earnings in excess of $50 but less than $100 were reported for a number of quarters.
 
 
 20
 When these seven quarters are subtracted, the claimant was left with having proved only thirty-five quarters of coal mine employment. The A.L.J.'s finding, that there was no other credible evidence to support a finding that the miner had at least five other quarters of coal mining employment with other employers, is supported by the record.
 
 
 21
 Accordingly, I would affirm.